IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WEB SERVICES, INC. and HARRISON UHL III., | § § § | |
| Plaintiffs | § § | NO. 06-CV-1775 (MLC) |
| v. | § § | |
| OVERSTOCK.COM, INC. | § § | |
| Defendant. | § § | |

**DEFENDANT OVERSTOCK.COM, INC.'S ANSWER
AND COUNTERCLAIM TO PLAINTIFFS WEB SERVICES, INC.
AND HARRISON UHL III'S COMPLAINT**

Defendant Overstock.com, Inc. ("Defendant" or "Overstock.com") files this Original Answer and Counterclaim to Plaintiffs Web Services, Inc. and Harrion Uhl III's ("Plaintiffs" or "Web Services") Original Complaint (the "Complaint") as follows:

**NATURE OF THE CASE**

1. In response to the allegations contained in paragraph 1 of the Complaint, Overstock.com admits that Plaintiffs are seeking declaratory relief but denies Plaintiffs' web domain registration and use of same are lawful.

2. In response to the allegations contained in paragraph 2 of the Complaint, Overstock.com is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 and therefore denies same.

3. In response to the allegations contained in paragraph 3 of the Complaint, Overstock.com admits that Plaintiffs have brought this action in an attempt to confirm their rights in the domain name "Overstocks.com."

## JURISDICTION AND VENUE

4. In response to the allegations contained in paragraph 4 of the Complaint, Overstock.com admits that diversity of citizenship exists. To the extent that Plaintiffs contend that they have been injured in an amount exceeding $75,000, Overstock.com denies such allegations.

5. In response to the allegations contained in paragraph 5 of the Complaint, Overstock.com admits that the Court has personal jurisdiction over Overstock.com and that Overstock.com does business in the State of New Jersey. Overstock.com denies the remainder of the allegations in paragraph 5 of the Complaint.

6. Overstock.com admits the allegations in paragraph 6 of the Complaint.

## PARTIES

7. Overstock.com is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint and therefore denies same.

8. Overstock.com is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint and therefore denies same.

9. Overstock.com admits the allegations in paragraph 9 of the Complaint.

## FACTS

10. Overstock.com is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint and therefore denies same.

11. Overstock.com is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint and therefore denies same.

12. Overstock.com is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint and therefore denies same.

13. Overstock.com is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint and therefore denies same.

14. Overstock.com is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint and therefore denies same.

15. Overstock.com admits the factual statements contained in paragraph 15 of the Complaint.

16. Overstock.com denies the factual statements contained in paragraph 16 of the Complaint.

17. Overstock.com admits that it sent Plaintiffs a letter dated July 12, 2005 advising Plaintiffs of Overstock.com's trademark. Overstock.com denies any other factual statements in paragraph 17 of the Complaint.

18. Overstock.com admits that it received a letter from Plaintiffs' counsel dated August 3, 2005.

19. Overstock.com admits that it sent Plaintiffs a letter dated April 4, 2006. Overstock.com denies any other factual statements contained in paragraph 19 of the Complaint.

## FIRST CAUSE OF ACTION

20.Paragraph 20 of the Complaint does not require an admission or denial.

21.Overstock.com admits there is a controversy with respect Plaintiffs' use of the domain name at issue. Overstock.com denies any other factual statements contained in paragraph 21 of the Complaint.

22.To the extent that Plaintiffs contend they have somehow been damaged in excess of $75,000, Overstock.com denies such allegation.

## RELIEF REQUESTED

23.The remainder of the Complaint is a request for relief, which does not require an admission or denial. In any event, Overstock.com denies that Plaintiffs are entitled to any of the relief requested.

## COUNTERCLAIMS

24.Overstock.com is a Delaware corporation having its principal place of business at 2855 East Cottonwood Parkway, Suite 500, Salt Lake City, Utah 84121-7045.

25.Upon information and belief, Web Services, Inc. is a corporation having its principal place of business in Mercer County, New Jersey.

26.Upon information and belief, Harrison Uhl III is an individual residing in West Windsor, Mercer County, New Jersey.

27.This is an action for trademark infringement, dilution, unfair competition, and cybersquatting arising under the Trademark Act of 1946, as amended, Title 15 U.S.C. §§1051 et seq. This Court has jurisdiction under the Trademark Law of the United States, 15 U.S.C. §1121, and under the Judicial Code of the United States, 28 U.S.C. §1338(a) and §1338(b).

28. Venue properly lies within the District of New Jersey pursuant to the provisions of 28 U.S.C. §1391 in that the claims arose within this District, and Web Services has committed acts of unfair competition and infringement within the District, as hereinafter alleged.

## FACTS

29. Overstock.com is a leading internet retailer of name brand surplus and close out merchandise at a discount. Since as early as 1999, Overstock.com has continually offered its products in interstate commerce under the mark Overstock.com (hereinafter referred to as the "Mark").

30. As a result of Overstock.com's marketing of its products and the extensive advertising for sale of high quality products under the Mark, that Mark has become well-known throughout the United States, in the State of New Jersey, and elsewhere in interstate commerce identifying Overstock.com's products and business. Customers and potential customers in these areas have come to identify Overstock.com by its Mark, and thereby distinguish similar businesses of others from those of Overstock.com.

31. Overstock.com has sold millions of dollars worth of high quality merchandise and spent millions of dollars in connection with the advertising of its business using its Mark. As a consequence of the extensive advertising and promotion of Overstock.com's Mark and the widespread use of that Mark, Overstock.com has developed substantial recognition among the consuming public for its high quality products sold under the Overstock.com Mark and has acquired and now enjoys a valuable reputation and significant goodwill under the Mark.

32. Overstock.com's use of the Mark in the internet retail industry has been substantially exclusive. As a result of this substantially exclusive use of the Mark and the long and widespread use that has been made by Overstock.com of the Mark, there is substantial

recognition and association of the Mark with Overstock.com by the consuming public for high quality merchandise at deep discounts.

33.     The Mark, "Overstock.com," is a registered trademark in the United States Patent and Trademark Office. That Registration issued as Registration No. 2,503,246 on October 30, 2001. This Registration is valid, subsisting, and in full force and effect.

34.     Upon information and belief, the domain name "Overstocks.com" was registered in 1996. Further upon information and belief, no web page existed at that domain name until December 2003. From December 2003 until March 2005, the domain "Overstocks.com" was registered to Web Services and contained only a single web page, which displayed only the words "Overstocks.com Coming soon..." It was not until March 2005 that Overstocks.com had any real content, and such content consists of links to on-line liquidators, including Overstock.com and its competitors.

35.     Overstock.com became aware of the infringing use of its Mark by Web Services in or around July 2005. On July 12, 2005 and April 4, 2006, Overstock.com sent letters to Web Services, demanding that it cease and desist from using the false mark. Web Services refused and continues to advertise its business under the name "Overstocks.com" and, in doing so, has repeatedly represented to retail consumers an affiliation with Overstock.com.

36.     Web Services was, upon information and belief, actually aware of Overstock's business and Overstock.com's use of its Mark prior to Web Services' use of Overstocks.com as a mark for its business of online liquidation. Upon further information and belief, Web Services is intentionally using a mark confusingly similar to Overstock.com's Mark for the purpose of trading on the reputation and goodwill of Overstock.com.

37. Overstock.com has advised Web Services of Overstock.com's rights in its Mark and has demanded that Web Services cease and desist from the use of a mark confusingly similar to Overstock.com's Mark. However, Web Services has knowingly and willfully persisted in such activity and will continue to so persist until enjoined by this Court.

## COUNT I
## TRADEMARK INFRINGEMENT

38. Overstock.com incorporates by reference the allegations in the foregoing paragraphs as if they were fully set forth below.

39. Web Services has adopted a mark for use in the online liquidation business that is a colorable imitation of Overstock.com's Mark used by Overstock.com long before such adoption. The mark adopted by Web Services appropriates verbatim, as its central terms, the terms of Overstock.com's mark "Overstock.com," so as to form a composite mark having a connotation similar to that created by Overstock.com's Mark. Web Services is engaging in a similar business to that of Overstock.com and affiliated with Overstock.com, and is doing so through the same channels of trade and to the same consumers. As a result of the foregoing, Web Services' false mark is confusingly similar to Overstock.com's federally registered Mark in violation of 15 U.S.C. § 1114.

40. In adopting and using a mark that is confusingly similar to the valuable Mark of Overstock.com, Web Services has sought to capitalize on Overstock.com's goodwill and Overstock.com's image as a supplier of internet retail business.

41. Web Services' unauthorized use of the Overstock.com's Mark as the central portion of its mark will enable Web Services to receive the benefit of the goodwill built up at great effort and expense by Overstock.com and to gain acceptance for its business, not on the

assumed merits of the products and/or services offered by Web Services, but on the reputation and goodwill of Overstock.com and its products.

42. Web Services' unauthorized use of Overstock.com's Mark as the central portion in "Overstocks.com" falsely indicates to the public that Web Services and its business are in some manner affiliated or connected with, sponsored by, or related to Overstock.com and its business.

43. Overstock.com is unable to control the quality of the services and products offered by Web Services under the mark "Overstocks.com" and such use by Web Services places the valuable reputation and goodwill of Overstock.com in the hands of Web Services, over whom Overstock.com has absolutely no control.

44. Web Services' use of the Mark constitutes utilizing false descriptions or representations in interstate commerce, thereby infringing Overstock.com's rights in violation of 15 U.S.C. § 1114(1).

45. Web Services' acts are jeopardizing the goodwill of Overstock.com and its valuable Mark. Overstock.com is entitled to injunctive relief and/or monetary damages pursuant to 15 U.S.C. § 1117(a).

46. Upon information and belief, Web Services' use of the Mark is intentional and willful, and has resulted in unjust profits and unjust enrichment for Web Services in an amount yet to be determined. Therefore, pursuant to 15 U.S.C. §§ 1117(a) and 1114(1), Overstock.com is entitled to monetary damages and/or injunctive relief to prevent Web Services' continuing acts of trademark infringement.

## COUNT II
### VIOLATION OF THE LANHAM ACT BY UNFAIR COMPETITION

47. Overstock.com incorporates by reference the allegations in the foregoing paragraphs as if they were fully set forth below.

48. The commercial activities of Web Services constitute unfair competition under common law and 15 U.S.C. § 1125. Web Services is using the web address "Overstocks.com" to unfairly compete in the online liquidation industry.

49. Overstock.com's Mark has become uniquely associated with and identifies Overstock.com. Web Services' use of the Mark comes long after Overstock.com established its rights in the Mark, and Web Services' use of the Mark is an effort to entice Overstock.com's customers and potential customers to purchase goods via Web Services' web site. Such use of the Mark by Web Services is a false designation of origin, a false representation, and/or wrongfully and falsely designates Web Services' products and services as being connected with or endorsed by Overstock.com.

50. Further, Web Services' use of the Mark is likely to cause confusion or mistake as the affiliation or association of Web Services with Overstock.com. Accordingly, Web Services has unfairly competed with Overstock.com in violation of 15 U.S.C. § 1125(a).

51. Web Services' acts of unfair competition are irreparably injuring Overstock.com's goodwill and eroding Overstock.com's share of the market and, unless enjoined by this Court, will continue to do so. Upon information and belief, Web Services' use of the Mark is intentional and willful, and such use has resulted in unjust profits and unjust enrichment for Web Services in an amount yet to be determined. Therefore, pursuant to 15 U.S.C. § 1117(a), Overstock.com is entitled to monetary damages and/or injunctive relief to prevent Web Services' continuing acts of unfair competition.

## COUNT III
## VIOLATION OF THE LANHAM ACT BY DILUTION

52. Overstock.com incorporates by reference the allegations in the foregoing paragraphs as if they were fully set forth below.

53. Web Services' adoption of the infringing mark will not only mislead and confuse the public as described above, but also effectively diminishes and possibly destroys the distinctiveness of Overstock.com's Mark. Web Services is therefore diluting the exclusivity and distinction of the Mark in violation of 15 U.S.C. § 1125(c).

54. Upon information and belief, Web Services is intentionally trading Overstock.com's reputation and goodwill and thereby diluting Overstock.com's Mark. As a result of Web Services' actions, Overstock.com has suffered, and is suffering, injury and damage in an amount yet to be determined.

55. Upon information and belief, Web Services' use of the Mark is intentional and willful, and such use has resulted in unjust profits and unjust enrichment for Web Services in an amount yet to be determined. Therefore, pursuant to 15 U.S.C. §§ 1117(a) and 1125(c), Overstock.com is entitled to monetary damages and/or injunctive relief to prevent Web Services' continuing acts of dilution.

## COUNT IV
## VIOLATION OF THE ANTI-CYBERSQUATTING ACT

56. Overstock.com incorporates by reference the allegations in the foregoing paragraphs as if they were fully set forth below.

57. Upon information and belief, NetworkSolutions, Inc. owned the domain name registration for "Overstocks.com" until January 6, 2002. Further upon information and belief, on January 6, 2002, Web Services took over the registration, and on September 16, 2002 Web Services renewed the registration. At all times during 2002, the web site "Overstocks.com" had no content.

58. By 2002, the Mark had become well-known in the State of New Jersey, and elsewhere in interstate commerce identifying Overstock.com's products and business. Customers

and potential customers in these areas had come to identify Overstock.com by its Mark, and thereby distinguish similar businesses of others from those of Overstock.com.

59.  Several years later in March 2005 (well after Overstock.com had registered its trademark and invested millions in the Mark), Web Services began for the first time to use the domain name "Overstocks.com" to sell discounted goods online.  Upon information and belief, Web Services had bad faith intent to profit from Overstock.com's Mark, which was distinctive and famous at the time Web Services obtained and renewed the registration.  Web Services had no prior commercial use for the domain name "Overstocks.com," and upon information and belief Web Services intends to divert consumers from Overstock.com to Web Services' web site with the infringing domain name "Overstocks.com."

60.  Web Services' acts of cybersquatting are irreparably injuring Overstock.com's goodwill and allowing Web Services to wrongfully profit from Overstock.com's Mark.  Pursuant to 15 U.S.C. § 1125(d)(1)(C), the infringing domain name should be cancelled or transferred to Overstock.com, and/or Overstock.com is entitled to monetary damages.

## DEMAND FOR TRIAL BY JURY

61.  Pursuant to FED. R. CIV. P. 38, Overstock.com respectfully demands a trial by jury in this cause.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Overstock.com requests that the Court (1) deny Web Services' request for declaratory relief; (2) issue a permanent injunction prohibiting Web Services from infringing on Overstock.com's Mark; (3) issue an order requiring Web Services to (i) destroy all literature, advertising material, stationery, and other printed materials that infringe upon Overstock.com's Mark, and (ii) file with the Court and serve on Overstock.com, within thirty (30) after entry of a permanent injunction, a written report verified under oath setting forth in detail the manner and

form in which Web Services has complied with the Court's order requested above; (4) enter judgment for Overstock.com for recovery of and from Web Services the actual, consequential, incidental, special, and enhanced damages requested in this Complaint, together with pre-judgment interest on such damages at the maximum allowable rate, and post-judgment interest on all amounts awarded until paid; and (5) enter judgment that Overstock.com be awarded from Web Services its costs and attorneys' fees incurred in connection with this action pursuant to 15 U.S.C. §1117. Overstock.com further requests such additional relief to which it may show itself justly entitled.

DATED: May 18, 2006

          Respectfully submitted,

          BRACEWELL & GIULIANI, L.L.P.

          By: _____
              Philip J. Bezanson

          1177 Avenue of the Americas
          New York, New York 10036-2714
          T: (212) 508-6100
          F: (212) 508-6101

              Glenn A. Ballard, Jr.
              Texas Bar No. 01650200
              John F. Luman III
              Texas Bar No. 00794199

          South Tower Pennzoil Place
          711 Louisiana, Suite 2300
          Houston, Texas   77002
          (713) 223-2300 (Telephone)
          (713) 221-1212 (Telecopier)

          Attorneys for Defendant-Counterclaimant
          OVERSTOCK.COM, INC.

-13-

OF COUNSEL:

J. TULLOS WELLS
Texas State Bar No. 21146500
106 South St. Mary's Street, Suite 800
San Antonio, Texas 78205-3603
Telephone:  210/226-1166
Telecopier:  210/226-1133